ROCKLAND TRUST COMPANY *vs.* SOUTH SHORE NATIONAL
BANK.

Norfolk.    April 5, 1974. — July 25, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Bills and Notes,* Check, Indorsement, Certification, Holder in due
course, Value. *Value. Bank and Banking.*

In an action of contract for the amount of a certified check brought by the
payee, a bank, against the certifying bank, a finding for the defendant
was proper where the payee bank, in which the check had been
deposited in a certain account by instruction of the drawer, had not
"withdrawn or applied" any "credit given for the time" under G. L.
c. 106, § 4-208 (1) (a), had no security interest in the check, had not
given value, and was not a holder in due course of the check when it
received notice from the certifying bank of rescission of the certifica-
tion. [75-76]
When a bank certifies a check but conditions its acceptance for payment
upon proper indorsement, no indorsement by the payee bank is
necessary to effectuate a demand for payment where the payee bank
has brought suit against the certifying bank for the amount of the
check, since the certifying bank is a primary party to the check.
[77-78]
A bank, payee of a certified check, did not have a security interest in the
check under G. L. c. 106, § 4-208, and did not give value under § 3-303
or § 4-209 and therefore was not a holder in due course under § 3-302
(1) where, after the check had been deposited in an account of the
drawer with the bank with instructions of the drawer for the bank to
wire the amount of the check to designated companies, the bank for
certain reasons never complied with such instructions. [78-79]
A bank, payee of a certified check deposited in an account therein, did
not have a security interest in the check sufficient to satisfy the
requirement of value under G. L. c. 106, § 3-302 (1), by virtue of
outstanding loans from the bank to the depositor and the bank's
common law right of set-off where, before the bank had exercised such
right, the certifying bank gave notice to the payee bank that the
certification was rescinded. [79-80]

CONTRACT. Writ in the Superior Court dated July 15, 1969.

The action was heard by *Leen, J.*

*William H. Clancy* for the plaintiff.

*A. Theodore Welburn (William A. Ryan, Jr.,* with him) for the defendant.

BRAUCHER, J. This is an action in contract for the amount of a certified check, brought by the payee bank against the certifying bank. Both banks had extended credit to the same fraudulent customer, the drawer of the check. We hold that the check was "deposited in an account" and that the "credit given for the item" was not "withdrawn or applied" under the Uniform Commercial Code, G. L. c. 106, § 4-208 (1) (a). The plaintiff therefore had no security interest in the check, did not give value, and was not a holder in due course under § 4-209. Hence the certification was not final in favor of the plaintiff under § 3-418, and the judge properly found for the defendant. We overrule the plaintiff's exceptions.

The action was tried without a jury, and the judge made voluntary findings of fact, which we summarize. As a result of transactions in 1968 and 1969, Wallace C. Ralston owed the plaintiff $32,000, and two corporations owned or controlled by him owed it $58,100 and $35,000, a total of $125,100. On June 19, 1969, the defendant lent Ralston $47,000, taking stock certificates as collateral, and credited $38,000 of the loan to a new checking account. Later the same day Ralston drew a check on the defendant for $21,000, payable to the plaintiff, and wrote on the back, "Deposit to Master Mariner Co. Inc. Wallace C. Ralston." Master Mariner Co., Inc. (Mariner), was the corporation which owed the plaintiff $58,100. Ralston delivered the check to Spence, an officer of the plaintiff, with instructions to wire $21,000 to two boat companies in Maryland in payment for boats being purchased in the name of Mariner. The check was deposited in the account of Mariner with the plaintiff.

On June 20, 1969, Spence obtained the defendant's certification of the check, "Payable only as originally

drawn and when properly endorsed," and the defendant charged $21,000 to Ralston's account. Later the same day both the plaintiff and the defendant were warned by a third bank to look closely at any securities delivered by Ralston, and the plaintiff wired to a Maryland bank and the two Maryland boat companies, "No funds will be wired for account of Master Mariner Company, Inc. today," confirming the wires by letter. After negotiations with Ralston and Spence over the weekend and on Monday, June 23, 1969, the defendant determined that the stock certificates deposited by Ralston were worthless as collateral because they had been reported lost or stolen. The defendant then applied the $17,000 remaining in Ralston's account against his loan.

On the following day, June 24, an officer of the defendant read to an officer of the plaintiff over the telephone a letter rescinding the certification and demanding return of the check for cancellation. The letter was hand delivered to the plaintiff the same day. On June 25 the check came to the defendant through normal banking channels. It bore the indorsements of the State Street Bank and Trust Company and of the Federal Reserve Bank but not that of the plaintiff. Payment was refused, and the check was returned to the plaintiff with a notification that certification had been rescinded and payment refused in accordance with the prior notice to the plaintiff.

Both parties acted in good faith at the time of the certification of the check. The only fraud was that of Ralston, who duped both the plaintiff and the defendant. The plaintiff never wired funds in accordance with Ralston's instructions, gave no consideration for the check, and did not change its position as a result of the cancellation or dishonor.

On the basis of his findings the judge ruled that the defendant's refusal to pay the check was justified because the check was not indorsed by the plaintiff when it was presented for payment, that the plaintiff was not a holder in due course, and that the defendant was justified in rescinding its certification. He found for the defendant, and

the plaintiff claimed exceptions. The case was transferred here from the Appeals Court under G. L. c. 211A, § 10 (A).

1. *Lack of indorsement.* Under the Uniform Commercial Code, G. L. c. 106, the check was payable on demand. § 3-108. On its delivery to the plaintiff as payee, the plaintiff became a holder and might in a proper case be a holder in due course. §§ 1-201 (20), 3-302 (2). The drawee of a check or other draft is not liable on the instrument until he accepts it. § 3-409 (1). Acceptance is the drawee's signed engagement to honor the draft as presented. § 3-410 (1). Certification is acceptance. § 3-411 (1). The defendant as drawee had no obligation to certify the check. § 3-411 (2). It could and did condition its acceptance and its engagement to pay the instrument. §§ 3-412, 3-413 (1). Thus the check was payable by the defendant only when "properly endorsed." As to the purpose of such conditional certification, see *Lipten* v. *Columbia Trust Co.* 194 App. Div. (N. Y.) 384, 391-394 (1920); Paton's Digest of Legal Opinions, Certification, Opinions 2A:3, 15B:1 (1940).

Presentment for payment is necessary to charge the drawer or indorsers as secondary parties. § 3-501 (1). Such a presentment is a demand for payment made on the payor by or on behalf of the holder. § 3-504 (1). The party to whom presentment is made may without dishonor require reasonable identification of the person making presentment and evidence of his authority to make it if made for another, and "a signed receipt on the instrument" for any payment. § 3-505 (1) (b), (d). Return of an instrument for lack of proper indorsement is not dishonor. § 3-507 (3). Presentment is entirely excused when the party to be charged, like Ralston in this case, has no reason to expect or require that the instrument be paid. § 3-511 (2) (b). Presentment is also entirely excused when payment is refused but not for want of proper presentment. § 3-511 (3) (b).

These provisions on presentment are not directly in issue here, but we think they provide an analogical basis for interpreting the requirement that the check be "properly endorsed." The defendant as acceptor was a primary party to the check, not a secondary party. § 3-102 (1) (d). No

presentment is necessary to charge the primary party, and the bringing of suit is in itself a sufficient demand for payment. *Cassiani* v. *Bellino,* 338 Mass. 765, 767 (1959), and cases cited. Where the instrument is in the hands of the payee, it is in the hands of a holder, and no indorsement by him is necessary. §§ 3-201, 3-202. *Security State Bank* v. *State Bank,* 31 N. D. 454, 458 (1915). The "receipt on the instrument" which the payor might without dishonor require need not take the form of an indorsement. Thus we conclude that the certification payable "when properly endorsed" required no indorsement so long as the check was in the hands of the payee. If we took a contrary view as to when a check is "properly endorsed," we would nevertheless hold that any condition of indorsement was excused both by the defendant's repudiation of its obligation and by the refusal of payment for reasons other than lack of proper indorsement. *Gallinaro* v. *Fitzpatrick,* 359 Mass. 6, 10-11 (1971). *Bulliet* v. *Allegheny Trust Co.* 284 Pa. 561, 566 (1925). Compare §§ 4-205 (1), 4-206; *Bowling Green, Inc.* v. *State St. Bank & Trust Co.* 425 F. 2d 81, 84 (1st Cir. 1970).

In view, however, of our holding below that the plaintiff was not a holder in due course, the indorsement issue does not affect the outcome.

2. *Holder in due course.* The judge ruled that the plaintiff was not a holder in due course and did not in good faith change its position in reliance on the certification. Since the check was never paid, we are not concerned with the Uniform Commercial Code provision making payment or acceptance final in favor of "a person who has in good faith changed his position in reliance on the payment." § 3-418. But the same section, with exceptions not now material, provides that "acceptance of any instrument is final in favor of a holder in due course." Accord: *Fort Dearborn Natl. Bank* v. *Carter, Rice, & Co.* 152 Mass. 34, 38 (1890). See Ames, The Doctrine of Price v. Neal, 4 Harv. L. Rev. 297, 304 (1891). Contrast *Plantations Bank* v. *Desormier,* 102 R. I. 565, 568 (1967). See note, 43 Harv. L. Rev. 631, 632 (1930); annotation, 25 A. L. R. 3d 1367 (1969).

If the plaintiff was not a holder in due course, on the other

hand, it took the check subject to all defences of any party which would be available in an action on a simple contract. § 3-306 (b). As the judge ruled, the defendant's contract of certification was voidable if the plaintiff, not being a holder in due course, had reason to know of Ralston's fraud before it gave or promised in good faith something of value or changed its position materially by reason of the certification. See Restatement: Contracts, § 477 (a) (1932), and Supplement (1935). Compare *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 581-582 (1895), and cases cited; Restatement 2d: Contracts (Tent. drafts Nos. 1-7), §§ 140 (1), 168 (1) (1973); Restatement: Restitution, § 28 (d) (1937). We reject the plaintiff's contention that Ralston's fraud was as matter of law not material to the defendant's certification.

It thus becomes critical to determine whether the plaintiff was a holder in due course of the check. To be a holder in due course, a holder must take the instrument (a) for value, (b) in good faith, and (c) without notice of any defence against it on the part of any person. § 3-302 (1). After it is shown that a defence exists, the holder has the burden of establishing that he is in all respects a holder in due course. § 3-307 (3). We consider only the requirement that the holder take "for value."

3. *Value.* A holder takes an instrument for value to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process. § 3-303 (a). The agreed consideration, if any, was the wiring of funds to Maryland companies, which was never performed. *Korzenik* v. *Supreme Radio, Inc.* 347 Mass. 309, 311 (1964). But the plaintiff argues that a bank "has given value to the extent that it has a security interest in an item." § 4-209. In the event of conflict § 4-209 governs § 3-303. § 4-102 (1).

A bank has a security interest in an item, in the case of an item "deposited in an account," to the extent to which credit given for the item has been "withdrawn or applied." § 4-208 (1) (a). Since the check in suit was deposited in an account and since the credit given was never withdrawn or

applied, the bank had no security interest under § 4-208, and hence had not given value under § 3-303 or § 4-209 at the time it received notice of the defence. Compare *Waltham Citizens Natl. Bank* v. *Flett,* 353 Mass. 696, 698 (1968); *Universal C.I.T. Credit Corp.* v. *Guaranty Bank & Trust Co.* 161 F. Supp. 790, 792-794 (D. Mass. 1958).

The plaintiff contends that it had a security interest apart from § 4-208, by virtue of its outstanding loans to Ralston and its common law right of set-off, citing *Bowling Green, Inc.* v. *State St. Bank & Trust Co.* 307 F. Supp. 648 (D. Mass. 1969), affd. 425 F. 2d 81 (1st Cir. 1970). The bank in that case, however, unlike the plaintiff in the present case, had a security interest in the check as proceeds of collateral covered by a security agreement with its depositor. 307 F. Supp. at 654-655 (1969), 425 F. 2d at 86 (1970). The plaintiff here did not exercise any right of set-off before it received notice of the defence, and the court in the *Bowling Green* case thought there were "some pitfalls" in the theory "that the Bank's inchoate right to set off . . . constituted a giving of value." 425 F. 2d at 86, n. 5 (1970).

It does not appear that any such theory was presented at trial, and it seems at least doubtful that a deposit to the account of a corporation for the special purpose of wiring funds to Maryland could be set off against indebtedness of Ralston. Compare *Boston-Continental Natl. Bank* v. *Hub Fruit Co.* 285 Mass. 187, 190-191 (1934); *Commercial Discount Corp.* v. *Milwaukee Western Bank,* 61 Wis. 2d 671, 679-683 (1974); annotations, 22 A. L. R. 2d 478 (1952), 8 A. L. R. 3d 235 (1966). If there was such a right, it was "not a lien or a right in the nature of a lien." *Furber* v. *Dane,* 203 Mass. 108, 117 (1909). *Krinsky* v. *Pilgrim Trust Co.* 337 Mass. 401, 405 (1958). We do not think it was such a security interest as to satisfy the requirement of value. See § 9-104 (i); comment 1 to § 4-208, 2 U. L. A. (Master Ed. 1968); *Wood* v. *Boylston Natl. Bank,* 129 Mass. 358, 359-360 (1880); *American Barrel Co.* v. *Commissioner of Banks,* 290 Mass. 174, 180-181 (1935); note, 71 Col. L. Rev. 302, 314-318 (1971). Compare *Fletcher* v. *Rhode Island Hosp. Trust Natl. Bank,* 496 F. 2d 927, 934-935 (1st Cir. 1974).

4. *Commercial convenience.* The plaintiff points out that it could have demanded and received cash instead of certification. To allow rescission of the certification, it argues, is to erode the usefulness of certified checks as the practical equivalent of cash. Without passing on a case which is not before us, we point out that the payment of money can also be rescinded for fraud or mistake. § 3-418. See *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268, 280-281 (1888); *Moors* v. *Bird,* 190 Mass. 400, 409-410 (1906); *National Shawmut Bank* v. *Fidelity Mut. Life Ins. Co.* 318 Mass. 142, 145-147 (1945); *Bowling Green, Inc.* v. *State St. Bank & Trust Co.* 425 F. 2d 81, 83 (1st Cir. 1970); Restatement: Restitution, § 28 (d) (1937); annotation, 40 A. L. R. 2d 997 (1955). Compare *Dakota Transfer & Storage Co.* v. *Merchants Natl. Bank & Trust Co.* 86 N. W. 2d 639, 644 (N. D. 1957) (payment by cashier's check). Since the plaintiff gave no value for the check, it loses nothing by the avoidance of the certification. See comment 3 to § 3-418, 2 U. L. A. (Master Ed. 1968).

*Exceptions overruled.*